## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILBERSON SEVERE DALICIER,** | : | **Civil No. 1:25-CV-672** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JPMORGAN CHASE BANK, N.A.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION[1]

### I.    Factual Background

Wilberson Dalicier is a prodigious, but prodigiously unsuccessful, *pro se* litigants who has filed some three dozen lawsuits in recent years. Dalicier's forays in federal court have been many and varied but are often marked by a familiar theme—Dalicier's claims that various businesses and lenders have violated his rights by declining to extend millions of dollars in credit to the plaintiff. What makes Dalicier's frequent demands that he has some legal right to received millions in goods and products on credit particularly ironic is the fact that Wilberson Dalicier is, by his own admission, a pauper who has consistently sought leave to proceed *in forma pauperis* as he has pursued these frivolous claims that the refusal to extend credit to this destitute litigant violates his legal rights.

---

[1] The parties consented to magistrate judge jurisdiction on September 9, 2025.(Doc. 32).

Given this extensive history of feckless, frivolous, *in forma pauperis* litigation in December of 2024, Chief Magistrate Judge Bloom recommended that a credit discrimination case brought by Dalicier be dismissed and: "in addition to dismissing the complaint, . . . recommend[ed] that this court enter a show cause order as to why a prefiling injunction should not issue against the plaintiff, prohibiting him from filing litigation based on the denial of his credit applications without paying the filing fee." <u>Dalicer v. Members 1st FCU</u>, No. 1:24-CV-1737, 2024 WL 5374925, at *4 (M.D. Pa. Dec. 23, 2024), <u>report and recommendation adopted sub nom.</u> <u>Dalicier v. Members 1st FCU</u>, No. 1:24-CV-01737, 2025 WL 365637 (M.D. Pa. Jan. 31, 2025).

The district court adopted this recommendation, and in order to prevent further abuse of the *in forma pauperis* process by Dalicier entered an order on May 30, 2025 that provided as follows:

> 1)Plaintiff Wilberson Severe Dalicier is ENJOINED pursuant to the All Writs Act, 28 U.S.C. § 1651(a), from proceeding in forma pauperis in any new civil case in this District in which he asserts that he was wrongfully denied credit.

> 2) This injunction shall not apply to any criminal cases and shall not prohibit Plaintiff from filing an appeal of this injunction.

> 3) If Plaintiff files a new civil case in which he asserts that he was wrongfully denied credit, the Clerk of Court shall docket this order to that case. If the reviewing Judge determines the new case was initiated in violation of the injunctive sanction, the case may be dismissed without any consideration of its merits.

Dalicier v. Members 1st Credit Union, Civil No. 1:24-cv-1737 (Doc. 13). Thus, as a result of his past litigation misconduct involving multiple lawsuits containing legal demands for millions of dollars in credit by an impecunious plaintiff, Dalicier is now enjoined from further frivolous *in forma pauperis* filings of this nature.

It is against this backdrop that we consider Dalicier's current complaint, and the motion to dismiss that complaint. Dalicier initially filed the instant case against JPMorgan Chase Bank, along with a motion to proceed *in forma pauperis*, on April 15, 2025. (Docs. 1 and 2). Both Dalicier's initial complaint and his motion to proceed *in forma pauperis* were deemed facially insufficient by Judge Arbuckle and Dalicier was admonished to file amended pleadings. (Docs. 4 and 7).

Dalicier responded to these orders in an enigmatic and elliptical fashion, filing amended pleadings which were rife with new riddles, inconsistencies and inadequacies. For example, nine days after he filed his first, flawed, motion for leave to proceed *in forma pauperis*, (Doc. 2), on May 5, 2025 Dalicier filed a second motion requesting leave of court to proceed without paying the filing fee required by law. (Doc. 5).

While Judge Arbuckle preliminarily granted Dalicier leave to proceed *in forma pauperis*, (Doc. 6), upon reflection the amended motion—like many of Dalicier's pleadings—leaves us with more questions than answers. For example, in his initial *in forma pauperis* motion, Dalicier declined to identify any sources of

income but claimed that his monthly expenses totaled $2,250. (Doc. 2). In the second motion which he filed nine days later, (Doc. 5), Dalicier repeated that his monthly expenses totaled $2,250 and stated that he received $300 per month in food stamps and public assistance. However, mysteriously, for the first time Dalicier also claimed to receive dividend and interest income of $1,800 per month. The mystery surrounding this new, previously undisclosed income was heightened when—oddly—Dalicier denied owning anything of value which would generate such income for him. (Id.)

As for Dalicier's amended complaint it alleged a violation of the Equal Credit Opportunity Act, (ECOA) 15 U.S.C. §1691, *et seq*. (Doc. 8). According to Dalicier in March of 2025 he applied for a Chase Sapphire Visa Signature credit card. (Id., at ¶ 5). Dalicier avers that, at the time of his application he had a FICO score of 750. (Id., at ¶6). Dalicier claims that on March 11, 2025 he received a written notice from Chase stating that his application was denied based upon a "low FCO score." (Id., at ¶7). Dalicier contends that this expressly stated reason for declining him credit was false and pretextual since he possessed a high FICO score and avers without any further specific well-pleaded facts that the true reason for the credit denial his race, national origin and age. (Id.)

Thus, the factual lynchpin in Dalicier's amended complaint is his allegation that Chase falsely and pretextually told him in its March 11, 2025 notice that he was

denied credit due to a "low FICO score." It is this crucial premise which JPMorgan Chase attacks in its motion to dismiss. (Doc. 20). Attaching the actual March 11, 2025 notice that Dalicier purports to quote in his amended complaint, JPMorgan Chase points out that the alleged reference in this notice to a "low FICO score" which serves as the factual crux of Dalicier's claim simply does not exist. Instead, the notice explains that Dalicier's application was denied for other independent reasons: namely, too few accounts with recent payment information; the number of inquiries on his credit report; his past or present delinquent credit obligations; and his history of poor credit performance. (Doc. 21-1).

Thus, the uncontested, authentic record which serves as the factual pivot for Dalicier's claim that he was denied credit for a false and pretextual reason—a "low FICO score"—proves that Dalicier's factual averment concerning the content of this notice is false. Because Dalicier may not maintain a legal claim based upon what is clearly a factual falsehood the motion to dismiss will be granted. Moreover, in light of this latest instance of litigation misconduct indulged in by the plaintiff while enjoying *in form pauperis* privileges, and given the material inconsistencies in his second application for leave to proceed *in forma pauperis* which claims that he receives $1,800 a month in dividends and interest even though he possesses no things of value, Dalicier's leave to proceed *in forma pauperis* will be revoked and he will be subject to the pre-filing injunction previously entered by this Court.

## II.    Discussion

## A.    Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather,

in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S.

8

at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover,

"documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment").

### B.    Dalicier's Amended Complaint Will Be Dismissed and His Leave to Proceed *In Forma Pauperis* Revoked

Considerations of law, legal ethics, public policy and basic honesty all require complaints to rest upon well pleaded facts rather that demonstrable falsehoods. False pleadings are an anathema in our system of justice, which relies upon candor to determine the truth. Given the pivotal role of truthfulness in litigation, it is well-settled that: "A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court." Herrejon v. Ocwen Loan Servicing, LLC, 980 F. Supp. 2d 1186, 1208 (E.D. Cal. 2013) citing Horsey v. Asher, 741 F.2d 209, 212 (8th Cir.1984).

In the instant case, Dalicier's amended complaint runs afoul of this bedrock principle since it asserts as a fact something that is obviously fictional. As we have noted, in this amended complaint  Dalicier alleges that in March of 2025 he applied

10

for a Chase Sapphire Visa Signature credit card. (Doc. 8, ¶ 5). Dalicier avers that at the time of his application he had a FICO score of 750. (Id., at ¶6). Dalicier then avers that on March 11, 2025 he received a written notice from Chase stating that his application was denied based upon a "low FCO score." (Id., at ¶7). We find that Dalicier's use of quotation marks in his pleading is done by design and plainly is intended to indicate that he is quoting directly from JPMorgan Chase's denial notice. This specific factual averment then becomes the lynchpin of Dalicier's amended complaint, since Dalicier insists that this expressly stated reason for declining him credit was false and pretextual given that he claims he possessed a high FICO score. From these "facts" Dalicier then invites us to infer that the true reason for the credit denial were his race, national origin and age. (Id.)

We now know that this averment—the factual crux of the amended complaint—is not true. The denial letter, whose authenticity is uncontested, does not say what Dalicier claims. Instead, the notice explains that Dalicier's application was denied because: he had too few accounts with recent payment information; the number of inquiries on his credit report was excessive; he had past or present delinquent credit obligations; and he possessed a history of poor credit performance. (Doc. 21-1).

The court is not required to indulge in Dalicier's creative fictions when assessing the sufficiency of his amended complaint. Since this pleading clearly rests

11

on a material misstatement of facts, we may infer a lack of good faith on Dalicier's

part, which fully justifies dismissal of this case. See Flores v. EMC Mortg. Co., 997

F. Supp. 2d 1088, 1128 (E.D. Cal. 2014).

Moreover, once Dalicier's false statements are redacted from this amended

complaint, and we rely upon the actual justification for this decision to deny credit

to this confessed pauper, it is apparent that Dalicier's claims fail on their merits. The

legal lynchpin of Dalicier's complaint is the federal Equal Credit Opportunity Act,

(ECOA), 15 U.S.C. § 1691, which provides in part that:

> It shall be unlawful for any creditor to discriminate against any
> applicant, with respect to any aspect of a credit transaction—
>
> **(1)** on the basis of race, color, religion, national origin, sex or marital
> status, or age (provided the applicant has the capacity to contract);
>
> **(2)** because all or part of the applicant's income derives from any public
> assistance program; or
>
> **(3)** because the applicant has in good faith exercised any right under
> this chapter.

15 U.S.C. § 1691 (a). Dalicier v. McLaren Newport Beach, No. 1:24-CV-599, 2024

WL 4315229, at *5 (M.D. Pa. Aug. 22, 2024), report and recommendation adopted

sub nom. Dalicer v. McLaren Newport Beach, No. 1:24-CV-00599, 2024 WL

5184305 (M.D. Pa. Oct. 2, 2024). In order "to establish a *prima facie* case under the

ECOA, a plaintiff must show that (1) []he was a member of a protected class; (2)

[]he applied for credit from the defendant; (3) []he was qualified for the credit; and

(4) despite qualifying, []he was denied credit." <u>Stefanowicz v. SunTrust Mortg.</u>, 765 F. App'x 766, 772 (3d Cir. 2019) citing <u>Anderson v. Wachovia Mortgage Corp.</u>, 621 F.3d 261, 268 n.5 (3d Cir. 2010).

In this case, once Dalicier's falsehoods are stripped from his amended complaint, and we are provided with the actual basis for JPMorgan Chase's decision, all that remains is a credit denial based upon a host of legitimate underwriting factors. This is not invidious discrimination; rather it is economically rational behavior and nothing that remains in Dalicier's amended complaint establishes a well-pleaded factual basis for inferring discrimination from what are otherwise legitimate business decisions.

In fact, when Dalicier's amended complaint is assessed in conjunction with his application for leave to proceed *in forma pauperis* which indicates that he has no assets and a negative monthly cash flow, the intellectual bankruptcy of his claims becomes clear. As we have previously observed in a related case:

> The docket affirmatively reveals that the denial of credit to Dalicier does not appear to be some act of invidious discrimination or the breach of some commercially reasonable contract. Rather, given Dalicier's own admissions [in his motion for leave to proceed *in forma pauperis*], this was an economically rational decision.

<u>Dalicier v. McLaren Newport Beach</u>, 2024 WL 4315229, at *6.

Therefore, Dalicier's amended complaint will be dismissed due to its lack of merit and the plaintiff's lack of candor.

Additionally, Dalicier's permission to proceed *in forma pauperis* will be revoked since his amended motion for leave to proceed *in forma pauperis*, like his amended complaint, displays a fatal lack of candor. This motion for leave to proceed *in forma pauperis* contains a crucial factual inconsistency. In his motion Dalicier first the first time claims to receive dividend and interest income of $1,800 per month, but denies having any savings, bank accounts, or possessing anything of value which would generate such a monthly income. (Doc. 5). Thus, presently Dalicier seems to claim that he receives a steady income stream from assets that he denies exist.

Moreover, Dalicer made these expedient and in some instances false statements in his amended complaint and amended motion for leave to proceed *in forma pauperis* in April and May of this year, at a time when filing sanctions proceedings were pending against him in <u>Dalicier v. Members 1st Credit Union,</u> Civil No. 1:24-cv-1737. These proceedings plainly put Dalicier on notice of the necessity of complete candor with the court. However, it is now apparent that the plaintiff chose a more expedient, and less truthful path. On these facts, Dalicier should face the consequences of his conduct. Dalicier's leave to proceed *in forma pauperis* will be revoked and he will be subject to the pre-filing injunction previously entered by this Court.

## III.   **Conclusion**

Accordingly, for the foregoing reasons, the defendant's motion to dismiss (Doc. 20), is GRANTED and this case is DISMISSED with prejudice. IT IS FURTHER ORDERED that Dalicier's leave to proceed *in forma pauperis* is revoked and he is now subject to the pre-filing injunction previously entered by this Court.[2]

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: September 9, 2025

---

[2] We note one final irony in this case. Despite the fact that Dalicier's complaint rests upon a material misstatement of fact, he has moved for summary judgment in his favor. (Doc. 25). This motion apparently invites us to exult his factual misstatements and treat those misstatements as undisputed facts. This we cannot do since on summary judgment we must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). Accordingly, this motion—which is frivolous and which Dalicier has not attempted to support with a brief—will also be denied. In particular, the plaintiff's failure to file a brief is a significant shortcoming since Local Rule 7.5 requires that any party who files a motion shall be required to file a brief in support of that motion and provides that: "If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn." Since the plaintiff has not filed a brief in support of this motion, we will deem the motion to be withdrawn. See, e.g., Salkeld v. Tennis, 248 F. App'x 341 (3d Cir.2007) (affirming dismissal of motion under Local Rule 7.5). Finally, in light of these rulings, JPMorgan Chase's motion to strike the plaintiff's summary judgment motion (Doc. 30), is dismissed as moot.